DENMAN & BICE, plaintiffs in error, *vs.* THE CHEROKEE IRON COMPANY, defendant in error.

A contract for the production of charcoal being that the producers were to deliver a definite quantity of good merchantable coal each day for a period of seven months, and that the consumer was to receive it at the pits, "in the basket," and haul it to the furnace, where it was to be measured and credited to the producers, at six cents per bushel, on their account for cash advances, it was the right of the producers to draw the coal from the pits at the rate requisite to make the stipulated delivery daily; and if the consumer failed to receive and haul at the like rate, any depreciation in quality or diminution in quantity occurring by exposure to weather, would be at his risk. It follows, that so long as the cash advanced to the producers was largely in excess of the value, at contract price, of all the coal drawn from the pits, the producers would have no reason to abandon or rescind the contract, or to sue for a breach in not hauling the coal away—more especially, if the consumer had never signified any positive determination not to bear the loss occasioned by destruction or depreciation from weather.

Contracts. Before Judge BUCHANAN. Polk Superior Court. August Term, 1875.

Reported in the opinion.

WOFFORD & MILNER; BLANCE & KING, for plaintiffs in error.

WARREN AKIN, for defendant.

BLECKLEY, Judge.

The plaintiffs sued the defendants, alleging the breach of a written contract. The defendant denied the breach, and pleaded, both as recoupment [and set-off, over-payments made to the plaintiffs in performing the contract. The trial resulted in a verdict against the plaintiffs for over $500 00. They made a motion for a new trial, and it was refused.

The subject of the contract was charcoal, which the plaintiffs were to burn, and the defendant was to receive. The defendant undertook to furnish money to pay for chopping the wood; to furnish the requisite supply of water; to furnish quarters at the colliery for all the laborers; and "to pay for all coal delivered at the furnace bank, at the rate of six cents per bushel, the same to be measured at the furnace bank." The plaintiffs, on their part, undertook to make for the defendant a good merchantable article of coal, not using more than three cords of wood to one hundred bushels; also, "in the delivery of the coal, not to send over one-tenth in brand, the brands not to exceed eighteen inches;" and "to deliver eighteen hundred bushels coal per day, from the 1st June to the 1st January, provided the wood can be cut, each bushel to contain twenty-seven hundred inches." It was stipulated that the plaintiffs were "to be charged with all money advanced for the benefit of the colliery; and the coal to be credited to their account, at the rate of six cent per bushel when they send it in; the coal to be received in the basket at the hearth."

By the "hearth," as explained by the evidence, was meant the hearth of the pits; the furnace bank, where the coal was to be measured, was at defendant's iron works. It was proved that the hauling was to be done by defendant, but when to be done, did not appear, further than can be collected from the terms above quoted from the within contract. The questions made before us, in the argument, were, how is the contract, in so far as it bears upon that point to be construed, and what consequences flow from such construction.

The plaintiffs contend that the defendant was bound to haul as fast as the coal was drawn from the pits, up to eight hundred bushels per day, the quantity which they stipulated to deliver. They say they were forced to abandon the contract, and thereby sustained damage, because the defendant would not haul at that rate, when pits were ready for the process of drawing.

Evidence was submitted, on the trial, to the effect that about twenty-eight hundred bushels were destroyed by reason of not being hauled in time; that when coal stands a week after it is ready for drawing, each kiln will lose one hundred bushels per day ; that if drawn and exposed to the weather, it will remain merchantable only a few days, will commence to lose after four or five days, lose constantly, and become worthless; and that when plaintiffs withdrew from the work, they had several kilns burning and several ready to draw.

The contract, taken all together, contemplates continuous co-operation between the parties in executing its terms. Inasmuch as the coal was to be measured at the furnace bank, the defendant was bound not to suffer any delay in transporting it thither that would be necessarily injurious to the plaintiffs. But it is clear that so long as the plaintiffs were overpaid by cash advances which the defendant had made to them, for all the coal which they had drawn from the pits and made ready for " the basket," they were not injured. As the coal was to be received at the hearth, in the basket, and so much each day, the loss to it by weather, after preparation for the basket, at that rate, would be the defendant's loss. The plaintiffs had a right to proceed upon that theory, and ought so to have proceeded. The stipulation for measurement at the furnace banks, rather than at the hearth, was most probably for the defendant's benefit. It was not material to the plaintiffs where it was measured. The basket, as the evidence shows, contained about two bushels. It might have been used to measure the quantity of each day's supply, as though the defendant had been there to receive it. If any special expense had been incident to this mode of measurement, the same would have

been chargeable to defendant, but it does not appear that such would have been the case. There was no question of room for storage, as the pits were in the woods.

When the plaintiffs abandoned the work they had quite a considerable sum of money which the defendant had advanced to them in excess of all the coal they had drawn. It was enough to pay for all the coal left in the pits and for some wood and other property left, the benefit of which the defendant got on taking possession. Over and above all these items, there was a balance of between $500 00 and $600 00, for which the verdict in the present case was rendered. The only possible doubt as to the verdict, is whether it should not be reduced to the extent of the value of the coal lost by reason of delay to haul; that is twenty-eight hundred bushels at six cents per bushel, $168 00. It does not appear clearly from the evidence whether that loss occurred on coal drawn or undrawn. We rather think the latter is true, and therefore, that it was properly disallowed by the jury.

Judgment affirmed.